UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIMBERLY HARTMAN,

Plaintiff, Case No. 13-cv-14774

v Honorable Thomas L. Ludington

THE DOW CHEMICAL COMPANY,

Defendant.

_______________________________________/

**ORDER DENYING MOTION FOR RECONSIDERATION**

Plaintiff Kimberly Hartman filed suit against her former employer, Defendant Dow Chemical Company, claiming that she was wrongfully terminated from her position as a Legal & Government Affairs Administrative Specialist in the Corporate Division. As relevant to the instant motion, Plaintiff claims that Defendant violated the Family and Medical Leave Act's anti-retaliation provisions when it terminated her employment.

On December 22, 2014, the Court denied Defendant's motion for summary judgment with respect to Plaintiff's FMLA retaliation claim.[1] The Court concluded that Plaintiff had sufficiently demonstrated that a question of material fact exists regarding whether Defendant's proffered reason for terminating her employment was pretextual, and therefore her FMLA retaliation claim survived summary judgment.

On January 5, 2015, Defendant filed a motion for reconsideration of the December 22, 2014 Order denying summary judgment on Plaintiff's FMLA retaliation claim. Because Defendant has not identified a palpable defect in the previous Order, and because the Court has

[1] The Court also granted summary judgment on Plaintiff's FMLA interference and Michigan's People with Disabilities Civil Rights Act claims. Neither party moved for reconsideration on those claims.

addressed the arguments that Defendant advances in its motion, the motion for reconsideration will be denied.

**I.**

On June 3, 2010, Defendant hired Plaintiff as a Legal & Government Affairs Administrative Specialist in its Corporate Department. Plaintiff worked on worker's compensation claims and real estate matters, in addition to providing support for an attorney, Toby Threet. She reported directly to John Ingold, also an attorney. Plaintiff also worked closely with Stacy McKeon, a paralegal, and Dana Chauvette, a co-op.

During her time at Dow, Plaintiff received favorable reviews of her work performance. Her supervisor, Mr. Ingold, noted that Plaintiff was "a good solid employee." Her performance reviews reveal similar comments; in her 2012 Performance Review, Mr. Ingold notes that Plaintiff "[m]eets [j]ob [e]xpectations" before explaining:

> Kim had a very good year as an important member of the very successful Michigan Ops Legal team. Stacy and Toby really value what Kim brings to the table, and her willingness to help out in any way that she can. Kim has also been a very good mentor for Dana. In 2013, I agree that it will be a key goal for Kim to take more from Stacy's plate as Kim continues to develop her knowledge and expertise.

Resp. Ex. 2 at 4.

Plaintiff worked an alternative Friday off schedule, which means that she worked a total of eighty hours in nine workdays with every other Friday off. Plaintiff explains that she would typically arrive around 8:15 a.m. and leave between 3:30 p.m. and 4:30 p.m. She further explains that she would make up any additional hours at home.

**A.**

Plaintiff suffers from psoriatic arthritis, a degenerative condition that causes damage to her joints. In 2012, she developed increasingly worsening pain in her shoulder. Specifically,

there was swelling in her shoulder, and sometimes she would lose feeling in her hand. She also had trouble lifting her arm behind her head, reaching behind her, and moving or lifting heavy objects.

In the spring of 2013, the pain progressed to such a degree that Plaintiff needed surgery. As she explained in an e-mail on April 10, 2013:

> I'm sorry to say that I have been told by my Rheumatologist, that I need surgery for the pain in my shoulder that has been getting worse over the past year. Distal Clavicle Resection is the technical name of what they need to do. The end of my collar bone is wearing away, and causing pain, lots of it.

Resp. Ex. 2 at 8. Plaintiff's surgery was scheduled for May 28, 2013, and she notified Dow that she would be out for approximately 4 to 6 weeks. Plaintiff concedes that she received no pushback about the time off:

> Q: Did you get any pushback from anyone, Mr. Ingold or anybody you worked with about you going out to have surgery?
>
> Hartman: No, I did not.

Mot. Summ. J. Ex. A at 25.

Although Plaintiff had estimated that she would be able to return to work in July, her surgeon did not release her to work in July. Instead, the surgeon decided to re-evaluate her progress on August 19, 2013. Mr. Ingold asked for additional details regarding her medical restrictions, which she provided.

Plaintiff nonetheless believed that she could return to work at Dow even before August 19, and she began working half days at the end of July. Then, on August 19, 2013, she was released to work full time with no restrictions.

Dow approved Plaintiff's FMLA leave for the entire time she was absent and recovering, beginning on May 28, 2013, and ending August 20, 2013. After returning to work, Plaintiff thanked the people she worked with for their patience and understanding.

**B.**

At some point in April 2013, Stacy McKeon, Plaintiff's coworker, began to question how much—or little—Plaintiff was actually working. Ms. McKeon observed Plaintiff leaving the office early on numerous occasions, and she began recording her absences in a journal. On May 8, 2013, McKeon informed Plaintiff's and her supervisor, Mr. Ingold, that Plaintiff appeared to be out of the office too much.

While Plaintiff was on medical leave for her shoulder surgery, her job duties were assumed by co-op Dana Chauvette. Ms. Chauvette contends that she had to repeatedly address issues arising from uncompleted tasks that were assigned to Plaintiff, some of which were from 2012. The revelation of Plaintiff's alleged poor performance made "Dow's concern about Hartman's time reporting . . . even more acute . . . ." Mot. Summ. J. 6.

As a result, after Plaintiff returned to work full time in August 2013, Dow began looking more carefully at Plaintiff's time cards. Plaintiff's supervisor, Jack Ingold, requested that Ms. McKeon keep track of when Plaintiff was physically at work. A Dow Human Resources Manager, Sara Mose, requested Plaintiff's gate records from August 15, 2013 through September 20, 2013. These records revealed that there was a 60-hour discrepancy between the hours Plaintiff recorded on her electronic time sheet and the hours she was physically on Dow's premises.

On September 27, 2013, Mr. Ingold and Ms. Mose met with Plaintiff to discuss the apparent 60-hour discrepancy. Plaintiff explained that she worked at home for about 2-2.5 hours

each night. Plaintiff further explained that she did not usually log on to the VPN at home, because she was generally moving files and emails into files offline. Defendant's review of Plaintiff's VPN records indicated that between August 20, 2013 and September 23, 2013 she had logged on to Dow's network on just two days: September 10 and September 23.

Equally important, Defendant did not believe that Plaintiff could have invested 2-2.5 hours of work a night without logging on to the VPN. Therefore, Ms. Mose and Mr. Ingold called for an Employee Review Meeting, in which an employee's supervisors and various other members of human resources review an employee's actions to determine whether termination is appropriate. Five Dow representatives participated in the ERM: Mr. Ingold, Ms. Mose, Jennifer Manchester, Corporate Human Resources Counsel; Lisa McKenney, Director – NA Financial and Statutory Accounting; and Mike Dizer, Senior Human Resources Manager – Midland Headquarters. The ERM concluded that Plaintiff had falsified time sheets and terminated Plaintiff's employment on October 3, 2013.

**II.**

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration must be filed within fourteen days after entry of the judgment or order. E.D. Mich. L.R. 7.1(h)(1). No response to the motion or oral argument shall be allowed unless the court orders otherwise. E.D. Mich. L.R. 7.1(h)(2). Pursuant to Rule 7.1(h)(3) "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reason of implication." E.D. Mich. L.R. 7.1(h)(3). In a motion for reconsideration, the movant must demonstrate that the court and the parties were misled by a "palpable defect." E.D. Mich. L.R. 7.1(h)(3). A "palpable defect" is a defect that is obvious, clear, unmistakeable, manifest, or plain. *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich.

1997). The movant must also show a palpable defect which, if corrected, would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A motion for reconsideration is not a vehicle to reargue previously addressed arguments, or to proffer new arguments or evidence that the movant could have presented earlier. *Sault Ste. Marie v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (motions under Federal Rule of Civil Procedure 59(e) "are aimed at *re* consideration not initial consideration") (citing *FDIC v. World Universal Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

**III.**

Defendant's motion for reconsideration focuses on two issues. First, Defendant argues that Sixth Circuit authority forecloses the method of proof that Plaintiff relies on to demonstrate that Defendant's reason for terminating Plaintiff's employment is pretext. More specifically, Defendant asserts that as a condition to being able to argue that Defendant's asserted reason for terminating her employment—that she engaged in time card fraud—is not the real reason for its decision, she must admit she engaged in time card fraud. Second, Defendant contends that this Court incorrectly evaluated the evidence Plaintiff relies on to demonstrate that Defendant's asserted reason for terminating her employment was pretextual (that there is a legitimate factual dispute about Defendant's assertion that time card fraud motivated Defendant's decision).

**A.**

As explained in the December 22, 2014 Order, Plaintiff established a prima facie case of FMLA retaliation. Defendant then proffered a legitimate, non-discriminatory reason for the termination of Plaintiff's employment: Defendant believed that Plaintiff had engaged in time-card fraud. Accordingly, the burden shifted back to Plaintiff to show that Defendant's non-discriminatory reason for the termination was pretextual.

To show pretext, Plaintiff argued that the alleged time-card fraud was not the actual motivation for the termination of her employment. First, she demonstrated that Defendant's investigation into the time-card fraud had not begun until after she had engaged in conduct protected by the FMLA. Second, she advanced an e-mail from Toby Threet that, taken in the light most favorable to Plaintiff, evidenced some discriminatory intent. Accordingly, this Court concluded that Plaintiff had sufficiently shown that her alleged time-card fraud was not the actual motivation for the termination of her employment.

Defendant now claims that this Court mistakenly permitted Plaintiff to allege that her alleged time card fraud was simply Defendant's pretextual explanation for the termination and not the actual motivation for the termination of her employment. Defendant contends that Plaintiff may not advance this claim because she has not conceded that Defendant's reason for termination—time card fraud—had a factual basis. Because Plaintiff will not concede that Defendant's accusation is true, Defendant suggests that this Court erred by permitting her to allege her theory of pretext.

This issue was previously addressed by the Court in its December 22, 2014 Order. The Court addressed the Sixth Circuit precedent that permits a plaintiff to show pretext via the "did not actually motivate" method without conceding the underlying facts:

> Generally, this method of proving pretext "requires that the plaintiff 'admit[] the factual basis underlying the employer's proffered explanation and further admit[] that such conduct could motivate dismissal.'" *Id*. This is problematic here because, of course, Plaintiff disputes Defendant's allegation that she engaged in time card fraud. Indeed, the Sixth Circuit has sometimes refused to even consider the "did not actually motivate' method of pretext where the plaintiff did not admit the underlying factual basis. *Chattman*, 686 F.3d at 349 ("*Chattman*, however, does not admit the factual basis underlying Toho's proffered legitimate reason for his discipline, which eliminates [this] category of pretext."). Nevertheless, in a similar situation, the Sixth Circuit has also analyzed the "did not actually motivate" method even when the plaintiff did not admit the underlying factual basis. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 287 n.6 (6th Cir.

> 2012) (noting that the "did not actually motivate" method was somewhat incompatible with plaintiff's denial of the underlying factual basis.). Although lacking unimpeachable authority, Plaintiff may seek to show pretext using the third method: that Defendant's belief that she engaged in time card fraud was not the actual motivation for terminating [] her employment.

Order 16-17. The Court's analysis was then followed by a footnote which provided: "Permitting Plaintiff to pursue the second method of showing pretext is consistent with Sixth Circuit precedent, which emphasizes that '[t]he three-part test need not be applied rigidly. Rather, [p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?' *Blizzard*, 698 F.3d at 285." While the Court acknowledged the conflicting Sixth Circuit precedent addressing the issue, it applied the precedent to the facts in the instant matter. Because the issue has already been addressed, this argument is not viable on a motion for reconsideration.

**B.**

Defendant next claims that this Court erred when it determined that Plaintiff had made a prima facie showing of pretext. Defendant insists that Plaintiff "cannot merely rely on the same evidence she produced in presenting her *prima facie* case" and that the only evidence of pretext that Plaintiff advanced was an e-mail from Toby Threet, which is insufficient as a matter of law. Reconsideration 6.

The Court concluded that Plaintiff had developed a prima facie case of FMLA retaliation based on temporal proximity.[2] That is, the timing of the termination, alone was sufficient to establish Plaintiff's prima facie case.

Then, after concluding that Defendant had advanced a legitimate reason for terminating Plaintiff's employment, the Court examined Plaintiff's evidence of pretext. To support her case, Plaintiff identified two additional pieces of evidence that support a finding of pretext: (1) the

[2] True, Plaintiff somewhat collapsed the first and third parts of the *McDonnell-Douglas* burden-shifting analysis by presenting all her evidence during the prima facie stage. However, in analyzing the facts at hand, the Court is not constrained by the categories that Plaintiff presented in her brief.

investigation into her alleged time-card fraud began only after her FMLA-protected conduct, and (2) the e-mail from Toby Threet, an individual who was involved in the investigation of Plaintiff's alleged time card fraud.

**i.**

With respect to the first piece of evidence, Defendant claims that this Court incorrectly applied the applicable legal standard. Defendant believes that Plaintiff must demonstrate that the "sheer weight of the circumstantial evidence . . . makes it more likely than not that the employer's explanation is a pretext, or coverup." Reconsideration 7 (quoting *Manzer*, 29 F.3d at 1084). But Defendant does not address the contrary Sixth Circuit authority. The Sixth Circuit has addressed similar situations several times, and each and every time the Sixth Circuit has concluded that the plaintiff had presented sufficient evidence of pretext by demonstrating that the employee was treated differently after engaging in FMLA-protected conduct. *See Cantrell v. Nissan North America, Inc.*, 145 F. App'x 99, 107-08 (6th Cir. 2005) (plaintiff had established pretext by showing that, although he had violated the employer's absentee policy many times, she was not fired for such a violation until after she engaged in FMLA-protected conduct)[3]; *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 397, 394 (6th Cir. 2005) ("[A]lthough DeBoer's performance evaluation indicating that she needed improvement occurred many months before she announced her pregnancy, Musashi did not have a negative reaction to

---

[3] Indeed, the dissent in *Cantrell* advanced Defendant's argument that, at best, differing treatment results in an "evidentiary 'equilibrium'":

> The Court holds that a jury could find it more likely than not that the nondiscriminatory reasons justifying termination were merely an excuse disguising the company's retaliation. The only stated reason for this finding is that Nissan did not terminate Cantrell earlier when her behavior was more egregious. My fear is that the majority's opinion makes it nearly impossible for an employer to terminate an employee if that employee [engages in protected conduct], even if it is clear that the employer has a valid reason to terminate the employee.

*Cantrell*, 145 F. App'x at 109 (Merritt, dissent). Despite Judge Merritt's well-expressed concerns, however, the Sixth Circuit has concluded that evidence of differing treatment—as here—means the issue of pretext is a question for the jury.

DeBoer's allegedly poor supervisory skills until after she announced her pregnancy."). Here, Defendant did not begin investigating Plaintiff's alleged time card fraud until after she announced that she would need to have surgery and take time off. This evidence, that Defendant treated her differently after she engaged in FMLA-protected conduct, is sufficient, given existing precedent, for Plaintiff to survive summary judgment at this stage.

**ii.**

Defendant also claims that Toby Threet's e-mail is not evidence of pretext as a matter of law. Defendant simply claims that the e-mail "is not a 'discriminatory remark' as a matter of law," because it was an "isolated and ambiguous comment[] . . . ." Reconsideration 8 (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993).

Contrary to Defendant's claims, Mr. Threet's remarks—"Do we have enough now to take action? Please?"—are not so ambiguous as to be non-discriminatory as a matter of law. Mr. Threet was involved in the investigation into Plaintiff's alleged time card fraud and even directed other employees to observe and report on how Plaintiff managed her time at work. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998) (citing *Abrmas v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995) ("[R]emarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, *but who nevertheless played a meaningful role in the decision to terminate the plaintiff*, were relevant.") (emphasis added). The e-mail in which Mr. Threet made the remarks was sent during the on-going investigation, and referred to the investigation into Plaintiff's alleged time card fraud. At the very least, the remarks evidence a desire by Mr. Threet to institute some sort of disciplinary action against Plaintiff. These remarks, taken together with the timing of the investigation, are sufficient for Plaintiff to show pretext and survive summary judgment.

**iii.**

Moreover, the Court evaluated the evidence under the correct legal standards in its December 22, 2014 Order. Defendant merely disagrees with the Court's conclusions; it does not identify any palpable defect in the Order. A motion for reconsideration is not a vehicle to advance old arguments that have received substantive attention, and therefore the argument is not appropriate on a motion for reconsideration. *Sault Ste. Marie v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (motions for reconsideration "are aimed at *re* consideration not initial consideration") (citing *FDIC v. World Universal Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Reconsideration (ECF No. 30) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 17, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 17, 2015.

s/Karri Sandusky
KARRI SANDUSKY