UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIMBERLY HARTMAN,

                Plaintiff,                        Case No. 13-cv-14774

v                                        Honorable Thomas L. Ludington

THE DOW CHEMICAL COMPANY,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW**

      Defendant Dow Chemical Company moves for judgment as a matter of law.  A trial was conducted from April 7, 2015 to April 14, 2015 to address Plaintiff Kimberly Hartman's complaint that she was terminated from her position with Defendant as a Legal & Government Affairs Administrative Specialist in the Corporate Division in retaliation for taking leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*. At the close of Plaintiff's case, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Procedure 50(a).  Defendant argued that no reasonable jury could conclude that Defendant had terminated Plaintiff's employment in retaliation for exercising her rights under the FMLA.  The Court took the motion under advisement and submitted the issue to the jury.  The jury returned a verdict in favor of Plaintiff, and the Court entered a judgment against Defendant for $338,441.36. ECF No. 68. Defendant then renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  Based on the following, Defendant's renewed motion for judgment as a matter of law will be denied.

**I.**

Defendant hired Plaintiff as a Legal & Government Affairs Administrative Specialist in its Corporate Department on June 3, 2010. Plaintiff worked on worker's compensation claims and real estate matters, in addition to providing support for attorney Toby Threet. She reported to John "Jack" Ingold, also an attorney, who physically worked in a different building. Plaintiff also worked closely with Stacy McKeon, a paralegal, and Dana Chauvette, a student intern. Plaintiff was scheduled to work an alternative Friday off schedule, requiring her to work a total of eighty hours in nine workdays with every other Friday off.

From the time she started in 2010 until the spring of 2013 Plaintiff received generally positive reviews from Mr. Ingold. Indeed, in March of 2013 Plaintiff received a performance review from Mr. Ingold stating:

> Kim had a very good year as an important member of the very successful Michigan Ops Legal Team. Stacy and Toby really value what Kim brings to the table and her willingness to help out in any way that she can. Kim has always been a very good mentor for Dana.

ECF No. 50 at 22-23.

One month later, on April 10, 2013, Plaintiff notified her team that her Rheumatologist had recommended that she undergo surgery on her shoulder. *Id*. at 23. On May 8, 2013, Ms. McKeon on her own initiative began taking notes regarding when Plaintiff was in and out of the office. ECF No. 51 at 121-129. Plaintiff went on medical leave on May 28, 2013, and underwent surgery on her shoulder on May 30, 2013. Trial Exhibit 27. Plaintiff had originally planned to return to work on July 15, 2013, however, following a medical checkup on that date, Plaintiff wrote to her team and informed them that she would need to remain on leave for an additional 4 weeks. ECF No. 51 at 33-34. Plaintiff then returned to work part time on July 29, 2013, and full time on August 20, 2013. ECF No. 50 at 43, 45. Dow approved the entire period from May 28, 2013 to August 20, 2013 as qualifying FMLA leave. Trial Exhibit 34.

- 2 -

Plaintiff's co-employees continued to track her time after she returned to work.   On August 2, 2013, four days after Plaintiff returned to work part time, Mr. Threet wrote an email to Mr. Ingold stating: "Jack, you asked me to advise you on Kim's arrival and departure times." Trial Exhibit 30. Subsequently, Ms. McKeon sent an email containing the following excerpt to Mr. Threet and Mr. Ingold:

> Also, since it has been about 5-1/2 weeks since Kim returned to work, I wanted to let you know that I have been tracking her hours since she returned to work (w/ restrictions & w/o restrictions).  Attached is the document with which I have been recording her time.  Some of the days have been highlighted where I attached notes.  As you will see, unless she is working from home, she has not been getting her full hours in.  I am not sure what she has been recording for her time.
>
> Dana and I have witnessed on a number of occasions that she has either been doing a lot of texting (or something) or on calls on her personal cell quite often.  I would say more than what you would expect the average employee would spend.

Trial Exhibit 40.  On September 20, 2013, Mr. Threet wrote to Mr. Ingold and reiterated Ms. McKeon's claim that Plaintiff was not working her required hours. Trial Exhibit 47. Mr. Threet concluded the email by asking: "Do we have enough now to take action? Please?" *Id*.  Mr. Ingold then forwarded Mr. Threet's message to Sara Mose, a Dow human resources manager, after eliminating Mr. Threet's request for action. *Id*. Later that day, Ms. McKeon wrote Ms. Chauvette, stating:

> Toby and I talked again today about Kim. He sent another e-mail to Jack with regards to the issues we are having and what can be done about them.  He did also speak with Jack. *Toby wants us to document the every instance when we see her either texting, on FB, Pinterest, printing recipes, etc.  Document what she is doing, date and time.*

Trial Exhibit 48 (emphasis added).

On September 26, 2013 Plaintiff received an email from Mr. Ingold proposing a meeting for September 27, 2013 to discuss performance issues. ECF No. 50 at 46. On September 27, 2013 Plaintiff met with Mr. Ingold and Ms. Mose, where she was questioned about her work

schedule and the amount of time that she claimed to be working from home. Trial Exhibit No. 55. *See also* ECF No. 50 at 49-51. Plaintiff was placed on administrative leave pending further investigation into her schedule and time sheets. ECF No. 51 at 100.

Following the meeting, Ms. Mose arranged for Michael Dizer, another Dow human resources representative, to obtain Plaintiff's gate records, payroll records, and VPN records. ECF No. 52 at 189, 195, 203.  At trial, Mr. Dizer testified that he had suggested a number of additional procedures that Dow could take in order to verify the information in those records, including performing forensics on Plaintiff's computer. ECF No. 52 at 204.  Defendant determined that such additional procedures were not necessary to its investigation. *Id*. at 204, 217.  After comparing the gate, payroll and VPN records with the time Plaintiff claimed to be working in her timesheets, Defendant terminated Plaintiff's employment on October 3, 2013, alleging that Plaintiff had committed timecard fraud. *See* ECF No. 50 at 52; ECF No. 51 at 104-05; ECF No. 52 at 96, 180, 209.

Plaintiff filed this action against Defendant on November 19, 2013, alleging, among other things, that Defendant had wrongfully terminated her in retaliation for exercising her rights under the FMLA. ECF No. 1. Plaintiff's additional claims were dismissed by summary judgment, ECF No. 29, and her retaliation claim proceeded to trial on April 7, 2015.

At trial, the parties disputed Defendant's motive for terminating Plaintiff's employment. Defendant argued that Plaintiff had been terminated for engaging in "timecard fraud."  In support of this claim, Defendant argued that, in tracking Plaintiff's time, Plaintiff's team determined that she could not have worked the hours at the office that she had represented in her time sheets. In response to Plaintiff's argument that she was putting in additional hours at home, Defendant argued that Plaintiff could not have worked sufficient additional time at home because she had

only logged into the Defendant's Virtual Private Network (VPN) two times during the entire period in question. Defendant concluded that it was not possible that Plaintiff could have worked the hours she claimed to have worked without logging into the computer network.

Plaintiff argued that she had been wrongfully terminated for exercising her rights under the FMLA.  First, Plaintiff pointed to the fact that her team members only began tracking her time after she notified them that she would need to take medical leave, with its associated impact on the team. Plaintiff also highlighted inconsistent testimony between Mr. Threet and Mr. Ingold regarding the possibility of holding an Employee Review Meeting (ERM) after Plaintiff informed her team that she would need an additional four weeks of leave on July 15, 2013. ECF No. 50 at 33-34.  Mr. Ingold explained as follows:

> Q. So you're not aware that [Mr. Threet] testified under oath that you told him that they had to hold off on doing anything like that? Are you aware of that?
> A. No.
> Q. So, if Mr. Threet comes into court and testifies that, in fact, they wanted to do an ERM on her, and someone put a stop to it, would he be lying?
> A. I just don't think that would be accurate. If there was going to be any sort of ERM or any other employee action, that's my job, not Toby's, and I certainly never heard or thought anything about that.

(ECF No. 51 at 33-34).

Mr. Threet, on the other hand, testified:

> Q. As far as the statements that were made by McKeon [repeated Ms. Bailey's comments], did you suggest, sir, to Mr. Ingold that an employee review meeting should be convened to consider that information?
> A. Yes.
> * * *
> Q. Now, after that point, did you have another discussion with Mr. Ingold about the employee review meeting over this Bailey situation while my client was off on FMLA leave?
> A. No, sir, because there wasn't an ERM on that.
> Q. You didn't have a later discussion with him on that issue?
> A. About the ERM? I had a discussion about the fact that there wasn't one.

> Q. Oh, so you had a discussion with him. In fact, Jack Ingold – didn't you tell me that Jack Ingold later informed me that a decision had been made not to convene an employee review meeting? Isn't that what you told me under oath?
> A. Yes, sir.
> Q. And then let – why don't you tell the jury what Mr. Ingold, seated here, told you about why they didn't want to have an employee review committee meeting at that point in time while she was on FMLA leave.
> A. My recollection is that he said that the decision had been made that if an employee review meeting had been held for alleged time card fraud while she was on leave, she might later file a lawsuit claiming that the action was because she was on leave.

ECF No. 52 at 27-28. Ultimately, Plaintiff claimed that the temporal proximity between her FMLA leave and her termination, together with the treatment she received after her return from FMLA leave was significant evidence of retaliation. On April 14, 2015, the jury returned a verdict in favor of Plaintiff, awarding her $50,310.00 in back pay and $122.297.00 in front pay. ECF No. 53.

At the close of Plaintiff's case, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). At that time, the Court permitted Defendant to briefly outline its motion, but did not rule from the bench. Instead, the case was submitted to the jury. After the jury returned a verdict for Plaintiff and the Court entered judgment in favor of Plaintiff, Defendant renewed its motion pursuant to Federal Rule of Civil Procedure 50(b).

Defendant asserts in its renewed motion for judgment as a matter of law that, based on the evidence proffered at trial, no reasonable jury could have found in favor of Plaintiff. Def.'s Renewed Mot. J.M.L, ECF No. 69. First Defendant claims the evidence indisputably shows that, after conducting a reasonable investigation, Defendant honestly believed that Plaintiff had engaged in time card fraud. Second, Defendant claims that Plaintiff submitted no evidence that time card fraud was not the real reason for her termination and that FMLA retaliation was the real reason for her termination.

## II.

Federal Rule of Civil Procedure 50(a) allows a party to make a motion for judgment as a matter of law "at any time before the case is submitted to the jury." FED. R. CIV. P. 50(a)(2). Rule 50(b) provides that if a court does not grant a motion for judgment as a matter of law during trial, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law." FED. R. CIV. P. 50(b). In ruling on a renewed motion, a court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id*.

Review of a motion for judgment as a matter of law is governed by the same standard as motions for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). As explained by the Sixth Circuit in *Tisdale v. Federal Express Corporation*:

> The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury; instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences.[1]

*Tisdale v. Federal Express, Corp*., 415 F.3d 516, 527 (6th Cir.2005) (quoting *Williams v. Nashville Network*, 132 F.3d 1123, 1130-31 (6th Cir.1997)). Thus, the Court may grant a motion for judgment as a matter of law and take the case from a jury "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."

---

[1] "[T]his court" expressly referred to in this quote is the 6th Circuit Court of Appeals. However, the Sixth Circuit has ruled that, in federal question cases, the standard of appellate review applied to Rule 50 motions based on sufficiency of the evidence is "identical to that used by the district court." *Williams*, 132 F.3d at 1130-31.

*E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir.2015) (citing *Radyansky v. City of Olmsted*, 496 F.3d 609, 614 (6th Cir.2007)).

## III.

The FMLA entitles employees to an annual total of twelve weeks of leave for a number of reasons including, inter alia, because of a "'serious health condition that makes the employee unable to perform the functions of the position of such employee.' " *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir.2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). Upon returning from FMLA leave, an employee must be reinstated to his position or an equivalent position in terms of pay, benefits, and other conditions of employment. 29 U.S.C. § 2614(a)(1). The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* at § 2615(a)(2).

## A.

The Sixth Circuit has recognized two discrete theories of recovery under the FMLA: (1) the "interference" theory arising under § 2615(a)(1), and (2) the "retaliation" theory arising from § 2615(a)(2). *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). At the trial in question, only Plaintiff's FMLA retaliation claim was at issue.

The central question in an FMLA retaliation case is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir.2006).  In answering that question, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.*

- 8 -

## B.

Where, as here, a plaintiff sets forth an FMLA retaliation claim based on circumstantial evidence alleging a single motive for discrimination, it is evaluated under the familiar McDonnell Douglas burden-shifting framework. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir.2012). Plaintiff thus had the initial burden of establishing a prima facie case of retaliation by showing: (1) Plaintiff was engaged in a statutorily protected activity; (2) Defendant knew that Plaintiff was exercising her FMLA rights; (3) Plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Id.* at 761. In its renewed motion for judgment as a matter of law Defendant does not dispute that Plaintiff satisfied this initial burden at trial.

Once Plaintiff established a prima facie case, the burden then shifted to Defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 761-62. Defendant was not required to meet this burden by a preponderance of the evidence, but rather "the employee's prima face case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

At trial, Defendant presented evidence that it terminated Plaintiff's employment because she falsified her timesheets. Falsifying timesheets is legitimate, nondiscriminatory reason to terminate an employee. *Espitia v. Procter & Gamble Co.*, 93 F. App'x 707, 709 (6th Cir. 2004); *Dailey v. Accubuilt, Inc.* 944 F. Supp. 2d 571, 578-79 (N.D. Ohio 2013); *Curry v. Goodwill Industries of Kentucky, Inc.*, 2013 WL 1411132, at *8 (W.D. Ky. Apr. 8, 2013) ("The Court

finds that Defendant has offered a legitimate, nondiscriminatory explanation for Plaintiff's termination— that [Plaintiff] falsified her time sheets . . . ."). Accordingly, Defendant presented a legitimate reason for the termination of Plaintiff's employment.

Because Defendant satisfied this burden of production, the burden shifted back to Plaintiff to demonstrate that Defendant's proffered reason for terminating her employment was pretextual. A plaintiff generally shows pretext by showing that the proffered reason: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Smith v. Chrysler Corp*., 155 F.3d 799, 805-06 (6th Cir. 1998); *Manzer v. Diamond Shamrock Chem. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). However, as noted by the Sixth Circuit, "[t]he three-part test need not be applied rigidly. Rather, [p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Technical College*, 698 F.3d 275, 287 n.6 (6th Cir. 2012). Thus the sole remaining issue for the jury at trial was "discrimination vel non," *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142-43 (2000) (citation omitted), and Plaintiff had the ultimate burden of persuading the jury that Defendant's proffered reason for terminating Plaintiff was pretextual.

## IV.

In its renewed motion for judgment as a matter of law, Defendant argues that Plaintiff did not carry its ultimate burden of persuasion at trial, and that no reasonable jury could have found that Defendant retaliated against Plaintiff for exercising her rights under the FMLA. Def's Renewed Mot. J.M.L., ECF No. 69. Specifically, Defendant argues that Plaintiff did not meet her burden of showing that Defendant's proffered reason for terminating Plaintiff, time card fraud, was mere pretext. First, Defendant argues that Plaintiff did not satisfy her burden of

- 10 -

proving that Defendant's reason for her termination of her employment – time card fraud – had no basis in fact under the first method of proving pretext. Second, Defendant argues that Plaintiff did not satisfy her burden of proving that the alleged time card fraud did not actually motivate the termination of her employment under the third method of proving pretext.[2] Each of these arguments will be addressed in turn.

## A.

Defendant first argues that Plaintiff did not meet her burden under the first method of proving pretext. In arguing that Plaintiff did not satisfy her burden of showing that Defendant's proffered reason for terminating her employment had no basis in fact, Defendant relies on the "honest belief rule." This rule provides that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001). To determine whether Defendant had an honest belief that Plaintiff had engaged in time card fraud, the Court must look "to whether [Defendant] can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Braithwaite v. Timken* Co.¸258 F.3d 488, 494 (6th Cir. 2001). In this regard, the decisional process used by the employer need not be optimal or leave "no stone unturned." *Smith v. Chrysler Corp.*, 155 F.3d at 807. "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Id. Although the Court must not "blindly assume that an employer's description of its reasons is honest," the Court should "resist attempting to micro-manage the process used by employers in making their employment decisions." Id. "When the

---

[2] The second method of proving pretext is not at issue in this case. Plaintiff did not argue that time card fraud could not be sufficient motivation for terminating an employee. Instead, Plaintiff argued that her alleged time card fraud had no basis in fact and that the alleged time card fraud did not actually motivate the termination.

employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id*. at 807-08.

Here, Defendant contends that it honestly believed that Plaintiff engaged in time card fraud. As Defendant notes in its brief, this Court previously found that Defendant had shown such an honest belief, and that Plaintiff had not established pretext on the grounds that Defendant's proffered reason for termination had no basis in fact. ECF No. 29 12-16.  Defendant now argues that the evidence presented at trial reaffirms this finding.

Defendant claims that the undisputed evidence at trial establishes that Defendant honestly believed that Plaintiff committed time card fraud after conducting a reasonable investigation. Def.'s Renewed Mot. J.M.L. 12-14, ECF No. 69. Defendant argues that the undisputed evidence at trial shows that it found a 60-hour discrepancy between Plaintiff's time records and her objective gate records, that Plaintiff had only logged into the VPN twice during the period in question, and that it was not possible, based on plaintiff's job duties, that she could be working 2 to 2.5 hours each night offline.  ECF No. 51 104, 100-101.  Defendant further argues that the evidence at trial showed that, in following Defendant's procedures for careful and independent review of the facts, the ERM participants only considered Plaintiff's electronic time car records, gate records, VPN records, and Plaintiff's explanation that she was working from home moving emails offline, and carefully and reasonably concluded that Plaintiff could not have been working the hours she reported without being logged onto Dow's network. Def's Renewed Mot. 13.  Defendant concludes that this was evidence of a reasonable investigation and demonstrated that Defendant honestly believed that Plaintiff had committed time card fraud. *Id*. at 14.

- 12 -

In its response to Defendant's motion, Plaintiff does not dispute that Defendant found a discrepancy between Plaintiff's time records and gate records. Plaintiff does dispute the extent of the discrepancy. Plaintiff argued to the jury and in response to Defendant's motion that the 60-hour figure was the result of faulty calculations based on prejudicially rounded numbers and wrongfully included vacation time. Whether the 60-hour number is in fact accurate, however, is immaterial to Defendant's honest belief. As noted above, an employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117. To determine whether Defendant had an honest belief that Plaintiff had engaged in time card fraud, the Court must look "to whether [Defendant] can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Braithwaite*, 258 F.3d at 494. Thus it does not matter if the 60-hour discrepancy finding was ultimately incorrect. It only matters that the members of Defendant's ERM reasonably relied on that number after conducting a reasonable investigation. Plaintiff presents no evidence that the ERM participants did not reasonably rely on the facts before it in terminating Plaintiff's employment.

Mr. Dizer's testimony regarding additional procedures that the ERM could have employed to verify their accusation of "time card fraud" is also not dispositive on this issue. Defendant did not need to undertake an optimal decisional process or leave "no stone unturned" in its investigation. *Smith v. Chrysler Corp.*, 155 F.3d at 807. "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id*. The ERM's consideration of Plaintiff's gate records, payroll records, and VPN records constituted a reasonable decisional process that led to a reasonably informed and considered decision.

Lacking proof that Defendant and its ERM participants did not honestly believe that Plaintiff engaged in time card fraud, her "disagreement with [Defendant's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [Defendant] had a reasonable basis to be dissatisfied." *Majewski*, 274 F.3d at 1116. Defendant is entitled to the protections of the honest belief rule because it has shown that it made a "reasonably informed and considered decision" to terminate Plaintiff's employment. *Smith v. Chrysler Corp.*, 155 F.3d at 807. Therefore, Plaintiff has not established pretext under the first method.

### B.

Defendant also asserts that Plaintiff did not satisfy her burden of proving that the alleged time card fraud did not actually motivate the termination of her employment under the third method of proving pretext. In other words, Defendant asserts that Plaintiff submitted no evidence at trial that time card fraud was not the real reason for her termination and that FMLA retaliation was the real reason for her termination.[3]

To establish pretext by advancing some evidence that the proffered explanation did not actually motivate the discriminatory action, a plaintiff can "attack[] the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citation omitted)

---

[3] As noted in the Order granting in part and denying in part Defendant's Motion for Summary Judgment, ECF No. 29, here Plaintiff seeks to use the "did not actually motivate" method of proving pretext while disputing Defendant's allegation that she actually engaged in time card fraud. The Sixth Circuit has stated that using the "did not actually motivate" method of proving pretext is somewhat incompatible with a plaintiff's denial of the underlying factual basis, but has nevertheless allowed a Plaintiff to proceed on such a theory. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 287 n.6 (6th Cir. 2012).

(quoting *Manzer*, 29 F.3d at 1084) (internal quotation marks omitted).  To make a showing of pretext in this manner, "plaintiff may not rely simply upon his prima facie evidence but must, instead introduce additional evidence of ... discrimination." *Manzer*, 29 F.3d at 1084. Although "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual," *Skrjanc*, 272 F.3d at 317, temporal proximity can be used as indirect evidence to support a claim of pretext. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir.2006).

Here, Plaintiff sufficiently satisfied her burden of identifying evidence of pretext.  The close temporal proximity between her FMLA leave, the time monitoring by her co-workers, and the adverse employment action, together with the testimony of Mr. Threet was sufficient evidence to support the jury's determination that Plaintiff was terminated for exercising her rights under the FMLA.  In viewing the evidence in a light most favorable to the non-moving party, Plaintiff produced sufficient evidence that a rational jury could conclude that she was terminated for exercising her rights under the FMLA. *Tisdale*, 415 F.3d at 527.

### i.

At trial, Plaintiff presented evidence that her team only began observing and recording her work hours after she notified them that she would need to take medical leave. On April 10, 2013, Plaintiff notified her supervisor that she would need to take time off for surgery. ECF No. 50 at 23. After Plaintiff requested time off for medical leave, on April 24, 2013, Plaintiff's co-worker Ms. McKeon began keeping a log of Plaintiff's work absences and her excuses. ECF No. 51 at 121-129.  After Plaintiff returned from surgery, Ms. McKeon continued to keep track of Plaintiff's time and send her findings to Mr. Ingold and Mr. Threet. Trial Exhibit 40. The evidence also suggested that Mr. Ingold had asked team members to monitor Plaintiff's time

after she returned to work following her FMLA leave. Trial Exhibit 30 ("Jack, you asked me to advise you on Kim's arrival and departure times").  This monitoring, in turn, precipitated the investigation into Plaintiff's gate record and VPN log-in times.

"Where an employer treats an employee differently after she [engages in protected conduct] than before she had done so, a retaliatory motive may be inferred." *Lamer v. Metaldyne Co. LLC*, 240 F. App'x 22, 30 (6th Cir. 2007). Here, in investigating Plaintiff's time card reporting, Defendant and its employees began to treat Plaintiff differently after she took FMLA leave.  While there may be reasons to the contrary, the jury could infer from the evidence Plaintiff produced that the investigation was motivated by her colleagues' frustration with her FMLA leave and not her alleged misreporting of work time after her return.

### ii.

In addition to calling attention to the timing of Defendant's investigation, Plaintiff also presented Mr. Threet's email to Mr. Ingold from September 20, 2013 in which Mr. Threet stated grievances that he had with Plaintiff and then asked: "Do we have enough now to take action? Please?". Trial Exhibit 47.  Plaintiff argued at trial that the email, together with the fact that Mr. Ingold forwarded the email to a human resources representative only after deleting the last question illustrated that Defendant's investigation of her time card reporting was initiated as a pretext to terminate her employment.

Defendant now argues that the undisputed evidence at trial shows that Mr. Threet's email had no effect on the decision-makers' decision to terminate Plaintiff, and that Mr. Threet did not want Plaintiff terminated but instead just wanted the decision-makers to hold an ERM. Def.'s Renewed Mot. J.M.L. at 18.

Discriminatory remarks may be some evidence of pretext. *Ecegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998).  The Sixth Circuit has identified four factors to be evaluated when considering whether an allegedly discriminatory remark impacted an employment decision:

>  (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Peters v. Lincoln Electric Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994)).

Under the first factor, a court must first identify the speaker. An isolated discriminatory remark by one with no managerial authority over the challenged personnel decision is not considered indicative of discrimination. *Id.* at 354. The Sixth Circuit has explained, however, that "remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant." *Id.* at 354-355 (citing *Wells*, 58 F.3d at 237-38; *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347-48 (1st Cir. 1998); and *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995).

Here, Mr. Threet was not involved in the ERM at which the decision was made to terminate Plaintiff's employment. However, up until that time, Mr. Threet was actively involved with and apparently very interested in the investigation of Plaintiff's time cards.  As an attorney who worked with Plaintiff, Mr. Threet was involved with the investigation into Plaintiff's absences and her alleged failure to keep up with her work assignments. He instructed Ms. McKeon and Ms. Chauvette to record the time when Plaintiff was not actively working. Trial

Exhibit 48 ("Toby wants us to document [ ] every instance when we see her either texting, on FB, Pinterest, printing recipes, etc. Document what she is doing, date and time.").  Moreover, when Ms. McKeon reported on Plaintiff's absences, she sent the e-mail to both Mr. Ingold (Plaintiff's supervisor) and Mr. Threet. Trial Exhibit 40 ("Also, since it has been about 5-1/2 weeks since Kim returned to work, I wanted to let you know that I have been tracking her hours since she returned to work ….").  A reasonable jury could properly conclude that Threet was in a position to influence Defendant's decision to terminate Plaintiff's employment.

A reasonable jury also could have concluded that the additional three factors identified in *Peters* weighed in Plaintiff's favor. *Peters*, 285 F.3d at 477-78.  At trial, Plaintiff presented evidence that Mr. Ingold forwarded the September 20, 2013 email to Ms. Mose, a member of the ERM, after omitting the last question. Trial Exhibit 47. Ms. Mose then forwarded the email to Mr. Dizer, also a member of the ERM. Trial Exhibit 46.  The ERM was held on September 27, 2013, one week after Mr. Threet sent the email, and Plaintiff was terminated on October 3, less than two weeks after Mr. Threet sent the email.  Due to the fact that Mr. Ingold forwarded the email to the other members of the ERM, and the fact that Plaintiff was terminated less than two weeks after Mr. Threet sent the email, a reasonable jury could have inferred that the statements were related to the decision making process, were sufficiently definite, and were proximate in time to Plaintiff's termination. *Peters*, 285 F.3d at 477-78.

Defendant argues that by "action" Mr. Threet just meant that he wanted Defendant to hold an ERM to determine Plaintiff's employment status, not that he wanted her terminated. Def.'s Renewed Mot. J.M.L. at 18-19. In making this argument, Defendant emphasizes Mr. Threet's trial testimony on that point. *Id.* However, it is the role of the jury to determine the

veracity of witnesses. A reasonable jury could have determined that it did not find Mr. Threet credible.

Therefore, in construing the e-mail in a light most favorable to Plaintiff, a reasonable jury could have concluded that the email constituted some evidence that Defendant was seeking a reason to terminate Plaintiff's employment.

### iii.

At trial Plaintiff also highlighted inconsistent testimony between Mr. Ingold and Mr. Threet regarding the possibility of holding an ERM after Plaintiff informed her team that she would need an additional four weeks of leave on July 15, 2013. ECF No. 50 at 33-34.  Mr. Ingold testified that there was no discussion about holding an ERM for Plaintiff after she notified the team that she would need to extend her FMLA leave. ECF No. 51 at 33-34.  Mr. Threet testified that he and Mr. Ingold had discussed holding an ERM at that time, but that Mr. Ingold said "the decision had been made that if an employee review meeting had been held for alleged time card fraud while she was on leave, she might later file a lawsuit claiming the action was because she was on leave." ECF No. 52 at 27-28.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves,* 530 U.S. at 151 (citing *Liberty Lobby,* 477 U.S. at 255.  It was the province of the jury in this case to determine how to weigh the testimony.  Viewed in the light most favorable to Plaintiff, the jury could have reasonably determined that Mr. Threet was credible. Consequently, the jury could have reasonably found this to be additional circumstantial evidence that Defendant's proffered reason for terminating Plaintiff was pretext.

### iv.

- 19 -

Plaintiff also points to the fact that she was terminated within one month and 13 days of taking extended FMLA leave. As noted above, although "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual," *Skrjanc*, 272 F.3d at 317, temporal proximity can be used as indirect evidence to support a claim of pretext. *See Asmo*, 471 F.3d at 598. A reasonable jury could have concluded that the temporal proximity between Plaintiff's FMLA leave and her termination, together with the additional evidence discussed above, was sufficient to find that Defendant's proffered reason for terminating Plaintiff was pretext.

## V.

Although Plaintiff failed to meet her burden of showing pretext under the first method, Plaintiff presented evidence adequate to satisfy her burden of showing pretext under the third method. The close temporal proximity between her FMLA leave, the time monitoring by her team, and her termination, together with Mr. Threet's testimony constitutes circumstantial evidence that Plaintiff was terminated for exercising her rights under the FMLA. In viewing the evidence in a light most favorable to the non-moving party, Plaintiff produced sufficient evidence for a rational jury to conclude that she was terminated for exercising her rights under the FMLA. The jury thus properly found for Plaintiff in this case.

Accordingly, it is **ORDERED** that Defendant The Dow Chemical Company's renewed motion for judgment as a matter of law, ECF No. 69, is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 30, 2015

- 20 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager